Case No. 22-10351

# United States Court of Appeals
## for the Ninth Circuit

United States of America,

      Plaintiff/Appellee,

v.

Eric Long,

      Defendant/Appellant.

Dist. No. 2:21-cr-00229-GMN-BNW-1

(District of Nevada, Las Vegas)

Appeal from the United States District Court
for the District of Nevada

## Appellant Eric Long's
## Opening Brief

Rene L. Valladares
Federal Public Defender
*Cristen C. Thayer
Assistant Federal Public Defender
411 E. Bonneville Ave., Ste. 250
Las Vegas, NV 89101
(702) 388-6577
Cristen_Thayer@fd.org

*Counsel for Appellant Eric Long

# Table of Contents

Table of Contents ...................................................................................ii

Table of Authorities.............................................................................iv

Jurisdictional Statement.......................................................................1

Detention Status ...................................................................................1

Issues Presented....................................................................................1

Statement of the Case ..........................................................................2

I.  Following an attempted murder on his life, Long possessed a firearm, which he held in his hand during a subsequent attack committed by his neighbor. ...............................................................2

II. The federal government charged Long with unlawful firearm possession and Long was released at his initial appearance. .........5

III. While on pretrial release for the next year and a half, Long traveled to and from California for medical treatment without incident. ...........................................................................................6

IV. Long accepted responsibility for possessing the gun and pleaded guilty without a plea agreement......................................................7

V.  Long objected to the government's request to enhance his sentence for using the gun in connection with an alleged assault, submitting a sworn witness declaration establishing self-defense. 7

VI. The district court ignored Long's evidence in favor of a partial video recording and unsworn witness statements that conflicted with Long's sworn evidence. .........................................................10

Summary of the Argument ...................................................................11

Argument..............................................................................................13

I.  The district court procedurally erred by miscalculating Long's Sentencing Guideline range. ........................................................ 13

    A.  Standards of Review ................................................................ 14

    B.  The clear and convincing standard of proof applied because the enhancement disproportionally affected Long's sentencing range. ...................................................................................... 14

    C.  Regardless of which standard of proof applied, sufficient reliable evidence did not support the enhancement. ............................... 16

II. The district court imposed a substantively unreasonable sentence. ................................................................................................ 22

    A.  Standard of Review ................................................................ 22

    B.  Analysis .................................................................................. 23

III. The mental health treatment supervised release condition must be vacated and remanded under *United States v. Nishida*. ............. 30

    A.  Standard of review .................................................................. 30

    B.  Analysis .................................................................................. 30

Conclusion ..................................................................................... 32

Statement of Related Cases

Certificate of Compliance

Certificate of Service

# Table of Authorities

## Federal Cases

*United States v. Autery*,
    555 F.3d 864 (9th Cir. 2009) ........................................................... 22

*United States v. Borrero-Isaza*,
    887 F.2d 1349 (9th Cir. 1989) ......................................................... 16

*United States v. Carty*,
    520 F.3d 984 (9th Cir. 2008) (en banc) ...................................... 13, 14

*United States v. Corral*,
    172 F.3d 714 (9th Cir. 1999) ................................................ 17, 20, 21

*United States v. Franklin*,
    18 F.4th 1105 (9th Cir. 2021) .......................................................... 14

*United States v. Hanna*,
    49 F.3d 572 (9th Cir. 1995) .............................................................. 16

*United States v. Hong*,
    938 F.3d 1040 (9th Cir. 2019) ......................................................... 14

*United States v. Howard*,
    894 F.2d 1085 (9th Cir. 1990) ................................................ 14-15, 15

*United States v. Jordan*,
    256 F.3d 922 (9th Cir. 2001) ........................................................... 15

*United States v. Lee*,
    821 F.3d 1124 (9th Cir. 2016) ......................................................... 13

*United States v. McGowan*,
    668 F.3d 601 (9th Cir. 2012) ........................................................... 16

*United States v. Nishida*,
    53 F.4th 1144 (9th Cir. 2022) ................................................ 12, 30, 31

*United States v. Pimentel-Lopez,*
859 F.3d 1134 (9th Cir. 2016) .......................................................... 22

*United States v. Ressam,*
679 F.3d 1069 (9th Cir. 2012) .......................................................... 23

## Federal Statutes

18 U.S.C. § 3231 ................................................................................ 1
18 U.S.C. § 3553 .............................................................................. 23
18 U.S.C. § 3742 ................................................................................ 1
28 U.S.C. § 1291 ................................................................................ 1

## Federal Rules

Fed. R. App. P. 4 ............................................................................... 1

## United States Sentencing Guidelines

U.S.S.G. § 2K2.1 .......................................................................... 7, 13
U.S.S.G. § 6A1.3 .............................................................................. 16

## State Cases

*Christmas v. State,*
462 P.3d 1239 (Nev. App. 2020) ..................................................... 17

## State Statutes

NRS 193.240 ............................................................................... 17-18
NRS 200.275 .................................................................................... 17
NRS 200.471 ............................................................................... 13, 17

## Jurisdictional Statement

The district court issued final judgment in this criminal case on December 15, 2022. 3-ER-413–20. The district court had jurisdiction under 18 U.S.C. § 3231. Appellant Eric Long filed a timely notice of appeal on December 29, 2022. 3-ER-420; Fed. R. App. P. 4(b)(1)(A)(i). This Court's jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## Detention Status

Long is in custody at Fort Worth FMC with an estimated release date of November 3, 2024.

## Issues Presented

I. Whether the district court calculated Long's Sentencing Guideline range incorrectly by applying a four-level enhancement based on the government's unsworn and incomplete evidence and ignoring Long's sworn rebuttal evidence, in violation of Long's due process rights.

II. Whether the district court imposed an unreasonable prison term of 24 months when Long's debilitating medical conditions place him in imminent danger of death or serious injury in prison, his criminal history is decades old, and his general success while on pretrial release.

II. Whether the mental health treatment condition is plainly erroneous per *United States v. Nishida* for delegating to the probation officer the decision as to whether Long must participate inpatient or outpatient treatment.

## Statement of the Case

**I. Following an attempted murder on his life, Long possessed a firearm, which he held in his hand during a subsequent attack committed by his neighbor.**

In October 2020, 46-year-old Appellant Eric Long was present for the shooting death of his friend and neighbor, Marcus Dumpson, at the hands of another neighbor. Sealed 4-ER-445. The perpetrator had a history of disputes with Dumpson's girlfriend, Dominique Hood. 3-ER-267–69.[1] The night that Dumpson was murdered, the perpetrator had sprayed a group of neighbors with pepper spray, including Long, his longtime partner Nicole Eckels, Dumpson, and Hood. Sealed 4-ER-445–46. While Long and Eckels were in their apartment washing off, Long heard a gunshot, ran outside, and saw Dumpson bleeding on the ground. Sealed 4-ER-445–46. Dumpson died of the gunshot wound, and the state called Long and Eckels to testify at the perpetrator's preliminary hearing, eventually securing a second-degree murder

_____

[1] Sabrina Schnur, *Woman accused of fatally shooting neighbor had history of disputes*, Las Vegas Review-Journal, Oct. 28, 2020, https://www.reviewjournal.com/crime/homicides/woman-accused-of-fatally-shooting-neighbor-had-history-of-disputes-2164948/

conviction. 4-ER-446; *see also* 3-ER-199–311 (records of the murder investigation, Long and Eckels statements, and testimony).

Five days after the state compelled Long and Eckels to testify, Long was the victim of an attempted murder. Sealed 4-ER-447. Long and Eckels were bringing groceries from their car to their home when a car passed by several times with the passenger hanging out of the window. Sealed 4-ER-447. After the groceries were unpacked, Long went to move his car and the suspicious car pulled up next to him and the passenger opened fire. Sealed 4-ER-447. Long was shot in the arm and the bullet shattered his elbow. Sealed 4-ER-447. He was taken to the hospital, and the fracture of his arm required ongoing outpatient treatment. Sealed 4-ER-447.

The police recovered five bullet cartridges from two different guns from the scene and took Long and Eckel's statements, but otherwise did not investigate this attempted murder or make any arrests. Sealed 4-ER-449. Afraid for his life, Long, who had prior felony convictions from years ago, obtained a gun. Sealed 4-ER-449.

Hood was evicted from her apartment a few months after Dumpson's murder and Long and Eckels volunteered to temporarily

store Hood's belongings at their home while she found new housing. 3-ER-347 (sworn declaration of witness). By May 2021, Hood had not retrieved her items and Long texted her to come and pick them up. 3-ER-347. On a subsequent phone call, Hood became furious at Long, yelling and cursing at him and asking what he would do if she did not get her belongings. 3-ER-347. Long said that he would put her belongings outside if she did not come and get them. 3-ER-348. Hood threatened to physically harm Long and his wife if either of them put her belongings outside. 3-ER-348. Later in the day Hood showed up and began yelling profanities outside of Long's apartment. 3-ER-348. Long came outside to talk to Hood and she "aggressively approached" Hood and the two argued. 3-ER-348.

When Long walked away from Hood she shoved him "forcefully" on the back of his head. 3-ER-348. At this point, knowing that Long was in extremely poor health, Long's neighbor intervened, at which time Hood spat on Long. 3-ER-348. The police arrived after Hood had committed battery on Long and arrested him for possessing a firearm. 3-ER-348. Long waived his *Miranda* rights and spoke with the police,

telling them that he held a firearm in his hand during the argument but did not point it at Hood or otherwise threaten her. PSR ¶ 12.

## II.  The federal government charged Long with unlawful firearm possession and Long was released at his initial appearance.

The federal government charged Long with one count of prohibited person in possession of a firearm, based on him having a prior felony conviction. 1-ER-54–55. The district court released Long on a personal recognizance bond with conditions at his initial appearance. 1-ER-57–65.

Long suffers from serious medical issues, including a severe spinal condition called syringohydromyelia, for which he receives disability benefits. 1-ER-98–99. This condition causes the development of a fluid-filled cyst damaging Long's spinal cord from within, causing pain, weakness, and stiffness, among other symptoms. 1-ER-99. Long also suffers from atrial flutter and hyperthyroidism. 3-ER-352–53. Due to his serious medical issues, the district court indicated that he may request to modify his conditions to take medical marijuana if he obtained a prescription. 1-ER-73; 3-ER-424 (CR 7); 3-ER- 436(CR 119).

### III. While on pretrial release for the next year and a half, Long traveled to and from California for medical treatment without incident.

After Long obtained a medical marijuana card from a California medical practice, he moved to  modify his conditions of release to allow the use of medicinal marijuana. 1-ER-66–79, 98–104. The government opposed and the court ultimately denied the request. 1-ER-80–97, 105–21.

But the court granted Long's other periodic and unopposed requests to modify his conditions to travel to California for his cousin's funeral and to obtain MRIs by removing his ankle monitor for a day. 2-ER-122–27, 134–43, 162–67, 174–86, 192–94. The court also granted the pretrial officer's request to lift the home detention condition of his release. 2-ER-150–55.

In June 2022, Long tested positive for marijuana and, at the pretrial officer's request, the district court modified his conditions to require substance abuse treatment. 2-ER-168–73. Except for his financial inability to travel to Wisconsin to address a misdemeanor warrant from 2011, Long otherwise successfully complied with his

6

conditions of release. 1-ER-31–32; 2-ER-128–34, 144–49, 156–61, 186–91; PSR ¶ 68.

## IV. Long accepted responsibility for possessing the gun and pleaded guilty without a plea agreement.

In Long entered a guilty plea to the single count of prohibited person in possession of a firearm. 3-ER-431–32 (CR 68). He took responsibility and changed his plea without the benefit of any plea agreement.

## V. Long objected to the government's request to enhance his sentence for using the gun in connection with an alleged assault, submitting a sworn witness declaration establishing self-defense.

At sentencing, the government sought to increase Long's guideline range with a four-level enhancement for using the firearm in connection with another felony. U.S.S.G. § 2K2.1(b)(6)(B). The government alleged that Long assaulted Hood when he possessed the firearm at issue because he held the gun in his hand during the altercation. 3-ER-403–07. As support, the government provided a FaceTime video recording made by Hood's friend that captured only part of the interaction

between Long and Hood and otherwise relied on unsworn statements.[2] 3-ER-384–99, 403–412.

Long submitted sworn evidence to rebut the government's unsworn and incomplete evidence, namely a sworn declaration from a neighbor who witnessed the interaction, Latazsha Reese. 3-ER-347–48. Reese swore that Hood "threatened to physically harm both [Long] and [his common law wife] if either of them put her belongings outside" of their home. 3-ER-348. Hood then "aggressively" approached Long and as he turned to walk away, followed Long, and "shove[d] him forcefully on the back of the head." 3-ER-348. Reese intervened because she knew Long was "in extremely poor health" and saw Hood spit at Long. 3-ER-348. Reese concluded that "[t]hroughout the incident, [Hood] was the aggressor. She threatened [Long and his wife], physically assaulted [Long], and continued to escalate the situation." 3-ER-348; *see also* 3-ER-350 (Reese's consistent statement to the police).

---

[2] With this Opening Brief, Long files a motion to transmit a copy of the government's video sentencing exhibits (Exhibits 1 and 3) and Long's mitigation video (Exhibit A). *See* CR 100, 102, 112.

Long also submitted a letter from his treating physician who explained that because of Long's serious medical conditions and prior brain surgery to treat the syringohydromyelia, a violent altercation with his head could "be catastrophic" and "cause bleeding into the tumor and lead to death or paralysis." 3-ER-375. Long's primary treating physician explained that his condition is "rare and complex," with the doctor only having treated it one other time in his 50 years of practice. 3-ER-352–53.

Long also presented a declaration from a former career BOP Warden, who explained that the BOP is unlikely to provide Long with the care he needs should he be imprisoned. Sealed 4-ER-453–57; 3-ER-355–73. The BOP Warden concluded that "the care and programming of Mr. Long will subject him to an unequal incarceration experience as compared to someone who is healthier," and while "prisons are by no means meant to be enjoyable or welcoming," "for someone with the medical conditions of Mr. Long, daily living in a correctional setting can be exponentially tougher and at times, particularly cruel." 3-ER-368.

## VI. The district court ignored Long's evidence in favor of a partial video recording and unsworn witness statements that conflicted with Long's sworn evidence.

The district court applied the plus four enhancement at sentencing, relying only on the government's unsworn and incomplete evidence to the exclusion of Long's sworn evidence:

> [T]he facts in this case are sufficient to demonstrate that there was reasonable apprehension of harm; that Mr. Long did intend to scare Ms. Hood; that Ms. Hood was actually scared and in fear of her safety; and that that is a reasonable position for Ms. Hood to take in light of all the information, including he's not just brandishing it, he's walking towards her, he's upset, and he's yelling, and another individual has to get in between them to push him away from her. So he's not afraid of her. She's the one who's afraid of him. She's the one who's calling a friend to FaceTime what's happening.

1-ER-37–38.

Calculating Long's Sentencing Guidelines range as 46–57 months, the district court acknowledged that a variance was warranted because of Long's mitigating evidence, but that "it doesn't diminish the act, that conduct, the possessing of the firearm by a felon and then placing the individual, Ms. Hood, in reasonable apprehension of harm." 1-ER-40.

10

The court imposed a 24-month prison sentence followed by three years of supervised release. 1-ER-40.

Without the four-level enhancement, Long's guidelines range would be 30–37 months' imprisonment. PSR ¶¶ 21, 22, 29, 30, 57 (adjusted base offense level of 19 and criminal history category I). Applying the same variance that his unchanging mitigating circumstances warranted at sentencing, this range would likely result in an 8-month prison sentence.

Long self-surrendered to the Bureau of Prisons without incident on March 14, 2023. He timely appeals the sentence.

## Summary of the Argument

The district court imposed a four-level enhancement to Long's sentencing range for using the firearm in connection with another felony, the alleged assault of Hood. But to so hold, the court relied on the government's incomplete and unsworn evidence to the exclusion of Long's sworn affidavit by a witness. Given the intricacies of the elements of assault and self-defense in Nevada, the district court violated Long's due process rights by relying on the government's

unreliable and incomplete evidence. This Court should reverse and remand for resentencing without the enhancement.

Furthermore, a two-year prison sentence is substantively unreasonable given Long's particular circumstances. According to a former career Warden in the BOP, Long's debilitating medical conditions render "daily living in a correctional setting" "exponentially tougher" for him, and "and at times, particularly cruel." 3-ER-368. Long also has stale criminal history, strong family support, and has shown that he can use the tools available to him while on release to rehabilitate. This Court should vacate the sentence and remand for the district court to impose a substantively reasonable sentence.

Finally, the mental health supervised release condition must be vacated under *United States v. Nishida*, 53 F.4th 1144, 1150 (9th Cir. 2022), for improperly delegating to the probation officer the authority to determine whether Long must participate in inpatient or outpatient treatment.

## Argument

## I.  The district court procedurally erred by miscalculating Long's Sentencing Guideline range.

"All sentencing proceedings are to begin by determining the applicable Guidelines range." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc). "A mistake in calculating the recommended Guidelines sentencing range is a significant procedural error that requires us to remand for resentencing." *United States v. Lee*, 821 F.3d 1124, 1126 (9th Cir. 2016).

The government sought a four-level enhancement for use of a firearm in connection with a felony, here alleging Long assaulted Hood with a firearm under Nevada law. U.S.S.G. § 2K2.1(b)(6)(B); NRS 200.471(1)(a)(2), (2)(b). Long rebutted the government's allegations with a sworn declaration by a witness who observed the entire interaction. To resolve this factual dispute and find in the government's favor, the district court was required to consider and rely only on reliable evidence. Instead, the court based the enhancement on the government's unsworn and incomplete evidence, while ignoring Long's sworn evidence that contradicted the government's evidence and raised

self-defense. This due process violation requires remand for resentencing without the enhancement.

## A. Standards of Review

Where, as here, a challenge to the applicable guideline calculation is preserved, this Court "review[s] the district court's interpretation of the Sentencing Guidelines *de novo*, its application of the Guidelines to the facts of the case for an abuse of discretion, and its factual findings for clear error." *United States v. Hong*, 938 F.3d 1040, 1051 (9th Cir. 2019); *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008). It is an abuse of discretion amounting to a due process violation if the district court "relied on materially false or unreliable information" to calculate the guideline range. *United States v. Franklin*, 18 F.4th 1105, 1117 (9th Cir. 2021).

## B. The clear and convincing standard of proof applied because the enhancement disproportionally affected Long's sentencing range.

The government bears the burden of proving the sentencing enhancements it seeks and thus "bear[s] the burden of proof for any fact that the sentencing court would find necessary to determine the base offense level." *United States v. Howard*, 894 F.2d 1085, 1090 (9th Cir.

14

1990). "Since the government is initially invoking the court's power to incarcerate a person, it should bear the burden of proving the facts necessary to establish the base offense level." *Id.*

Long requested that the district court apply the clear and convincing standard of proof to the enhancement dispute because the four-level enhancement increased Long's range by more than fifty percent—from 30–37 months to 46–57 months. 3-ER-401. This Court's caselaw supports applying clear and convincing standard of proof when the contested issue has "an extremely disproportionate effect" on the sentence relative to the offense of conviction. *United States v. Jordan*, 256 F.3d 922, 929 (9th Cir. 2001).

The district court concluded that a preponderance of the evidence standard applied, but "also, if it were clear and convincing, I agree with the government that, in any case, the facts in this case are sufficient to demonstrate" Long assaulted Hood. 1-ER-37. But the district court did not point to any facts in particular that met the clear and convincing standard of proof. And, as explained in further detail below, the government's evidence did not meet either the clear and convincing or preponderance standards or proof.

15

**C.    Regardless of which standard of proof applied, sufficient reliable evidence did not support the enhancement.**

"The constitutional guarantee of due process, which continues to operate through sentencing, circumscribes the district court's [sentencing] discretion." *United States v. Borrero-Isaza*, 887 F.2d 1349, 1352 (9th Cir. 1989). The "trial court violates a defendant's due process rights by relying upon materially false or unreliable information at sentencing." *United States v. Hanna*, 49 F.3d 572, 577 (9th Cir. 1995). Accordingly, the Sentencing Guidelines instruct that district courts must resolve important disputed factual issues only with reliable information. U.S.S.G. § 6A1.3(a).

A reversible due process violation occurs when the defendant shows the challenged information "is (1) false or unreliable, and (2) demonstrably made the basis for the sentence." *United States v. McGowan*, 668 F.3d 601, 606 (9th Cir. 2012). For the first prong, information is unreliable if it lacks minimal indicia of reliability. *Id.* For the second prong, this Court reviews the record to decide whether reliance on the improper information "probably did occur." *Id.* at 608 (cleaned up). This analysis "requires an exercise of judgment rather

16

than a mechanical word search." *United States v. Corral*, 172 F.3d 714, 716 (9th Cir. 1999).

Here, the government alleged that Long assaulted Hood, which constituted using the firearm in connection with a felony. Nevada defines assault as "intentionally placing another person in reasonable apprehension of immediate bodily harm," which is a felony if "made with the use of a deadly weapon or the present ability to use a deadly weapon." NRS 200.471(1)(a)(2), (2)(b). This means that the government must prove that (1) the defendant "had the specific intent to place the victim in apprehension of immediate bodily harm, (2) the victim apprehended this harm, and (3) [the defendant] engaged in conduct which made this apprehension reasonable." *Christmas v. State*, 462 P.3d 1239, *4 (Nev. App. 2020). Self-defense is an available defense to assault. *See* NRS 200.275 ("In addition to any other circumstances recognized as justification at common law, the infliction or threat of bodily injury is justifiable, and does not constitute mayhem, battery or assault, if done under circumstances which would justify homicide."); NRS 193.240 ("Resistance sufficient to prevent the offense may be made

by the party about to be injured [to] prevent an offense against his or her person, family or some member of his or her family.").

In applying the enhancement here and finding that Long assaulted Hood under Nevada law, the district court relied on the government's unreliable information, violating the due process rules outlined above. As to the first due process prong, the government's evidence lacked minimal indicia of reliability, especially when taken in context with Long's sworn and complete evidence. The sworn affidavit of Long and Hood's neighbor conflicted with Hood's unsworn statements to the police, calling Hood's credibility, and therefore reliability, into question.

The neighbor swore that Hood "threatened to physically harm both [Long] and [his common law wife]" if they put her belongings outside when speaking to Long on the phone. 3-ER-347–48. The neighbor further swore that when Hood arrived at the apartment, she began yelling profanities outside of Long and Eckels's apartment. 3-ER-348. And when Long came out of his apartment to speak to Hood, she aggressively approached him and the two argued. 3-ER-348. Hood then followed Long when he tried to leave the verbal altercation, shoved him

in the back of the head, and spit on him. 3-ER-347–48. The neighbor unequivocally swore that "[t]hroughout the incident, [Hood] was the aggressor. She threatened [Long and Eckels], physically assaulted [Long], and continued to escalate the situation." 3-ER-348.

Hood, on the other hand told the police in an unsworn statement that when she arrived at the apartment Long "approached me with a gun in his hand pointed it in my face and said multiple time he was going to kill me and shoot me." 3-ER-406; *see also* 3-ER-412 (Hood claiming he "clocked" the gun at her and said "I'm going to shoot you"). Hood further claimed that she simply "told him I was just trying to get my stuff and that's when he went into his house and proceeded to throw my stuff all on the ground." 3-ER-409.

The contradictions in the two versions of events, and the sworn nature of the neighbor's statement, render Hood's statements lacking in the minimal indicia of reliability. And the partial nature of the FaceTime recoding, where in Long does not point the gun at Hood and holds it down by his side, is also lacking reliability because it does not include the full interaction, which is necessary to a determination of

whether an assault even occurred, and if so whether Long was acting in self-defense.

As to the second prong of the due process test, the district court relied on Hood's statements and the partial recording to impose the enhancement. The court did not address or acknowledge the sworn evidence Long submitted that raised self-defense and directly contradicted Hood's version of events. Instead, the district court only discussed the incident from Hood's point of view, relying on her expression of fear. 1-ER-37–38. This reliance violated Long's due process rights and requires remand. *See Corral*, 172 F.3d at 716 (holding that remand was required when the record showed the unreliable information "may have mattered" to the district court's guidelines calculation).

Adding further to the error here, the district court relied on Hood's unsworn written and video statements that she was scared without assessing whether this was an objectively reasonable apprehension of fear given the total reliable circumstances. That the district court focused on Hood's subjective expressions is not surprising, as the government relied on Hood's purported subjective feelings of

20

apprehension to support the enhancement without addressing Long's

sworn testimony that contradicted Hood's version of events. 3-ER-405–

06. The district court thus held Hood "was actually scared and in fear of

her safety" which was "a reasonable position for Ms. Hood to take in

light of all the information." 1-ER-37–38. But the district based this

finding by considering only the government's evidence. 1-ER-37–38

("[H]e's not just brandishing it, he's walking towards her, he's upset,

and he's yelling, and another individual has to get in between them to

push him away from her. So he's not afraid of her. She's the one who's

afraid of him. She's the one who's calling a friend to FaceTime what's

happening."). Therefore, the district court did not assess the true

totality of the circumstances when assessing whether the government

had proved an assault occurred, which includes that Hood's purported

fear was reasonable considering the total circumstances, as well as

whether Long's unrebutted declaration established self-defense.

"If a sentencing court violates a defendant's constitutional right to

due process, a fortiori it has abused its discretion." *Corral,* 172 F.3d at

716. The neighbor and Hood's two versions of event cannot be

reconciled. And while the district court generally has discretion as to

what evidence to rely upon to resolve a factual dispute at sentencing, when sworn evidence conflicts with unsworn and incomplete evidence, the court cannot rely on the unsworn and incomplete evidence to resolve the factual disputes. *Cf. United States v. Pimentel-Lopez*, 859 F.3d 1134, 1144 (9th Cir. 2016) (recognizing the valuative difference between sworn testimony and unsworn statements to police regarding statements implicating the defendant by a person that may be attempting to minimize their culpability).

Taking the totality of the reliable facts presented, the district court improperly held that the government had met its burden to sustain the enhancement. Because of the significant procedural error in calculating Long's guideline range, this Court should vacate the sentence and remand for resentencing.

## II. The district court imposed a substantively unreasonable sentence.

### A. Standard of Review

This Court reviews the substantive reasonableness of a sentence for abuse of discretion. *United States v. Autery*, 555 F.3d 864, 869–71 (9th Cir. 2009).

22

**B.    Analysis**

To be reasonable, a sentence must not be greater than necessary to fulfill 18 U.S.C. § 3553(a)'s sentencing goals. *United States v. Ressam*, 679 F.3d 1069, 1089 (9th Cir. 2012). Reasonableness analysis turns on the particulars of each case and appellate review cannot simply "rubber stamp" the sentence. *Id.* at 1087–88.

Long's particular circumstances, and the circumstances underlying the federal offense, render a two-year prison sentence unreasonable and greater than necessary.  At least six factors demonstrate the unreasonable nature of a 2-year prison sentence for Long.

First, given Long's serious medical conditions a custodial sentence was greater than necessary.  Long's primary care physician Dr. Ted Rose explained he "suffers from three medical illnesses, any one of which is potentially life-threatening, even with expert management." 3-ER-352–53. His most concerning condition is syringomyelia, "a rare tumor of the spinal cord (central nervous system). This tumor slowly enlarges and ultimately causes paralysis and death." 3-ER-352. Long underwent brain surgery in 2015 when this tumor was discovered.

23

Sealed 4-ER-494–50. The surgery initially helped but in recent years his condition has significantly worsened. Long "had a partial resection of the tumor about six years ago at the University of California-Irvine" and "recent studies show the tumor to be progressing, such that further surgery will be necessary. He could require emergency surgery at any time to prevent complete paralysis." 3-ER-352.

Syringomyelia is a progressive condition that "ultimately causes paralysis and death." 3-ER-352. A visible example of this is Long's right hand. Long's right hand is grossly twisted, functionally useless, and described as a "clawhand." Sealed 4-ER-551. Five years ago, Dr. Rose categorized Eric as "totally disabled." Sealed 4-ER-554. Eric's physical deterioration has been accompanied by chronic pain. Sealed 4-ER-540–49. Until recently, he was under the care of a pain management doctor who prescribed him strong narcotics. Sealed 4-ER-557–60.

Long was more recently diagnosed with atrial flutter, "a disturbance in heart rhythm that leads to rapid beating, fall in blood pressure, heart failure and, untreated, death." 3-ER-352; Sealed 4-ER-485–90. Long must regularly see a cardiologist and nephrologist and take daily medication to prevent a relapse. 3-ER-352.

When he was diagnosed with atrial flutter, it was discovered that Long has hyperthyroidism. 3-ER-352; Sealed 4-ER-492. "This condition can cause a rapid heartbeat, heart failure, weight loss, impulsive behavior, eye problems, weakness, and, untreated, death." 3-ER-352–53.

In Dr. Rose's professional medical opinion, Long "require[s] care by an expert, experienced physician with access to a full-service medical center that has Neurosurgery available immediately should an emergency occur." 3-ER-353. But former Warden Maureen Baird, who worked for the BOP for more than 27 years, opined that the BOP is unlikely to provide Long with the level of care he needs to stay alive. 3-ER-355–73. Warden Baird explained the BOP is experiencing "critical staffing shortages," which will more significantly impact Long because without sufficient staff, the prison will be unable to ensure he can attend his necessary and numerous specialty medical appointments. 3-ER-362–66.

Warden Baird explained that Long's medical conditions will result in him serving a harsher sentence because, although he is eligible for a camp placement, he will instead need to be incarcerated in a prison

with a federal medical facility. 3-ER-357–59. Unlike camps, FMCs are secured facilities that house all level of security inmates, and higher security inmates regularly interact with minimum security inmates like Long. 3-ER-359. Baird opined that Long, because of his minimal prison history, limited understanding of the prison environment, and serious medical conditions, will face a higher risk of being targeted and injured by higher security inmates. 3-ER-361–62, 366. Baird concluded that Long will be subjected to "an unequal incarceration experience as compared to someone who is healthier," amounting to an "exponentially tougher" time in prison that at time will be "particularly cruel." 3-ER-368.

Because of his medical problems and mobility issues, while on pretrial release and otherwise, Long rarely left his home where he lived with Eckels and his service dog Karma. Sealed 4-ER-459. Long's debilitating medical conditions favored a noncustodial sentence, rather than 2 years of exceptionally cruel incarceration.

Second, while Long has a history of convictions, his criminal history is old and stems from his time as a young man in California. He has no countable convictions. His only felony convictions are from 1994

and 1996, when he was 19 and 22 years old. PSR at ¶¶ 38 (attempted burglary), 40 (possession of controlled substance with firearm). He is now 48 years old. Aside from traffic tickets, his most recent conviction, was in 2009, a misdemeanor. PSR ¶ 50.

Third, Long demonstrated during a lengthy period of pretrial release that he can be successful outside of a carceral facility and use the tools available to rehabilitate if he runs into any issues. For example, when he tested positive for marijuana (which was the result of him using a topical ointment he thought contained CBD but actually contained THC) he complied with the district court's order to participate in substance abuse treatment and did not have any further positive tests. 2-ER-168–73; 3-ER-18.

Fourth, Long serves as a caretaker for his long-time partner Eckles. Eckels has coronary heart disease and relies on Long to take care of her as she takes care of him. Sealed 4-ER-460. She has two surgical implants: an angioplasty stent and a defibrillator. Sealed 4-ER-562–65. Long has saved her life on more than one occasion, such as Long getting her the emergency aid she needed when her defibrillator failed and she became unconscious. Sealed 4-ER-460.

Fifth, Long has other strong family support. Eckels's son and Long's stepson, Derrick Simmons, described him as "the most loving person I know" with "a heart of gold" who "is an amazing dad and grandfather." 3-ER-379. Simmons stated that he has watched Long grow the last 20 years and overcome his rough past, and he "wouldn't want anybody else as my dad and my daughter[']s grandfather." 3-ER-379.

Long also spoke with his sister, Crystale Mejia, at least three times a week before he went to prison. 3-ER-381. Long and Mejia have a shared troubled childhood. As small children their drug addicted mother was unable to feed and take care of them, and they were forced to steal food to survive. Defense Sentencing Exhibit A, at 0:20–:40. Long also was admitted to a mental hospital when he was 11 years old, where he remained for 6 months. Defense Sentencing Exhibit A, at 0:40–1:00. His mother threw him out of the home at 13 years old, and he was left to fend for himself, including selling drugs to survive, which began his involvement in the criminal justice system. Defense Sentencing Exhibit A, at 01:30–2:50. Mejia recognized that it has been a struggle to work through the trauma of her and Long's childhood and it has taken

therapy. 3-ER-381. Long "is open to returning to mental health treatment as he believes it may help him deal with his childhood trauma as well as his anxiety and depression, and the stress from the instant case." PSR at ¶94.

Sixth, despite his medical disabilities, Long demonstrated that he will nonetheless contribute to his community, further demonstrating a custodial sentence was unreasonable. Despite his physical limitations, Long helped out at his new apartment complex during his pretrial release. His landlord wrote to the court to express how, "over the course of his residency here [Eric] has proven to be an upstanding, extremely helpful, and responsible resident." 3-ER-383. His landlord stated that it "is not uncommon to see Mr. Long during his time off helping his elderly neighbors with carrying groceries, throwing away trash or simply cleaning up around the community." 3-ER-383.

Overall, the facts particular to Long and the instant case all strongly support a probationary sentence that would allow Long to continue on his rehabilitative path. The district court erred by imposing a 2-year prison sentence, especially in light of the former BOP Warden's sworn statement that "daily living in a correctional setting can be

29

exponentially tougher and at times, particularly cruel." 3-ER-368. This

Court should vacate the sentence and remand for the district court to

impose a substantively reasonable sentence.

## III. The mental health treatment supervised release condition must be vacated and remanded under *United States v. Nishida.*

### A. Standard of review

Long did not object to the wording of the mental health treatment

supervised release condition. Therefore, this Court reviews for plain

error, which is established by showing an (1) error, (2) that is plain, and

(3) that affects substantial rights, and (4) seriously affects the fairness,

integrity, or public reputation of judicial proceedings. *United States v.*

*Nishida*, 53 F.4th 1144, 1150 (9th Cir. 2022).

### B. Analysis

Long's supervised release term is governed by a mental health

substance treatment condition that states:

> You must participate in a mental health
> treatment program and follow the rules and
> regulations of that program. The probation
> officer, in consultation with the treatment
> provider, will supervise your participation in the
> program (provider, location, modality, duration,
> intensity, etc.). You must pay the costs of the
> program.

3-ER-417. This Court recently vacated, as plainly unconstitutional, a substance abuse treatment condition nearly identical to that imposed for the mental health treatment condition.  In *Nishida*, this Court reviewed substance abuse and mental health treatment conditions that stated the "'probation officer, in consultation with the treatment provider, will supervise [Nishida's] participation in the program (such as provider, location, modality, duration, and intensity).'" 53 F.4th at 1148. Applying plain error review, the Court held that the condition impermissibly delegated to the probation officer the discretion to set the location, modality, and intensity of the treatment, including whether to send the defendant to inpatient treatment. *Id.* at 1151–55. Therefore, this Court vacated the conditions and remanded "so that the district court can clarify the scope of authority delegated to the probation officer consistent with this opinion." *Id.* at 1155.

This Court should vacate Long's mental health treatment condition under *Nishida* and remand for the district court to "clarify the scope of authority delegated to the probation officer consistent with this opinion." *Id.* at 1155. For example, the district court could clarify that the treatment authorized is outpatient only, such as the court did with

31

the substance abuse treatment condition. *See* 3-ER-417 ("You must participate in an outpatient substance abuse treatment program and follow the rules and regulations of that program. The probation officer will supervise your participation in the program (provider, location, modality, duration, intensity, etc.). You must pay the costs of the program.").

## Conclusion

This Court should vacate the sentence in full and remand for resentencing. Alternatively, the Court should vacate the mental health condition per *Nishida* and remand.

Dated: June 12, 2023

Respectfully submitted,

Rene L. Valladares
Federal Public Defender

*/s/ Cristen C. Thayer*
Cristen C. Thayer
Assistant Federal Public Defender
Attorney for Appellant Eric Long

32

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)** | 23-10351

The undersigned attorney or self-represented party states the following:

(●) I am unaware of any related cases currently pending in this court.

( ) I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

( ) I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** | /s/ Cristen Thayer    **Date** | Jun 12, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 17**       *New 12/01/2018*

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 23-10351

I am the attorney or self-represented party.

**This brief contains** 5,822 **words,** including | | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

☉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.

☐ a party or parties are filing a single brief in response to multiple briefs.

☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated | |.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Cristen Thayer **Date** June 12, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** *Rev. 12/01/22*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 15. Certificate of Service for Electronic Filing

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)** | 22-10351

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☒ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**

☒ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

Eric Long, #63320-509
FMC Fort Worth
Federal Medical Center
P.O. Box 15330
Fort Worth, TX 76119

**Description of Document(s)** *(required for all documents)*:

Appellant Eric Long's Opening Brief

**Signature** | /s/ Cristen C. Thayer      **Date** | June 12, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 15**                                                           *Rev. 12/01/2018*